## No. 6157.

## FRANK JONES v. THE STATE.

MURDER—FACT CASE.—See the opinion and the statement of the case for evidence *held* insufficient to support a conviction for murder of the second degree.

APPEAL from the District Court of Rains. Tried below before the Hon. J. A. B. Putman.

This conviction was in the second degree for the murder of R. S. Browning, and the penalty assessed was a term of eight years in the penitentiary.

Frank Woodson was the first witness for the State. He testified that he knew the deceased who died at his, witness's, house on the morning of May 22, 1885. The witness lived in Rains county, Texas, about four miles southeast from the town of Emory, and about four hundred yards from the railroad tank, which, for two years prior to his death, had been in the charge of the defendant. Deceased was a man of family, thirty-six or thirty-seven years old, and lived in the neighborhood of the tank. While plowing in his field on the evening of May 17, 1888, the witness heard the report of a gun fired at or near the tank. A person hallooed just after the shot was fired. As shooting was a common thing about the tank the witness paid no attention to this occurrence. A short time after that shot was fired the witness was informed that a man had been shot at the tank, and he went at once to that place. He found Browning lying, face down, on a blanket, with a gun shot wound in his abdomen. He was in a tent stretched near the tank, which tent was a place used for retailing liquor. Doctor Young was the proprietor of that establishment, and the defendant was his clerk. No person was with the deceased when the witness reached him, but Gilmour's cook arrived shortly afterward. On reaching the deceased the witness asked him if he was seriously hurt. He replied: "That boy has murdered me; I shall not live until sundown. I shall not live to see my family." Witness then asked him how it happened, and he replied: "As I came from your house a while ago I picked up

a snake and brought it with me to near the tent where Frank Jones was lying down reading. I said to him that I had brought him a pet, and believed I would throw it on him. Jones got up and said: 'If you throw that snake on me I will shoot you,' and ran into the tent and came out again with a pistol in his hands. behind him. I told him not to be fooling with that pistol and to put it up, but he did not do it. I was then holding the snake by its tail with its head on the ground, and said to Frank: 'Well, lets throw it in the pool and see it swim;' and as I turned to throw it into the pool Frank Jones brought the pistol around to his hip; pointed it at me and shot me. He did not raise his. hand higher than his hip. I fell, and Frank ran up and caught hold of me. I tried to get him to go after my wife but he would not, and I then tried to get him to go for you, but he would not." That statement was made by deceased in reply to the question of the witness. The witness did not know where the defendant was when he, witness, reached the deceased.

Cross examined, the witness stated that his conversation with deceased occurred about thirty minutes after he heard the report of the pistol. Deceased told witness that when he fell the defendant ran to and caught him, and asked him: "Mr. Browning, have I hurt you?" About twenty-five minutes after witness reached the deceased, the defendant came to the tent, the witness. understanding that he had been to witness's house. He asked deceased, no person other than himself, witness and deceased being present: "Mr. Browning, has there ever been any hard feeling between us? It was an accident; you know I did not intend to hurt you." Deceased replied: "Frank, I do not know what your intention was." Deceased then said that there had never been a previous difficulty or hard feelings between himself and defendant, and remarked to defendant: "If you had put up the pistol, as I told you to do, you would not have shot me." Witness did not see either Gilmour or Johnson at the tent. He had known defendant about four weeks, during which time he, witness, frequently visited the tent. He never saw the defendant take a drink, and never heard of his drinking.

Mrs. Browning, the widow of the deceased, testified, for the State, that word was brought to her, on May 17, 1885, that her husband, who was at the tank, had been shot. She went to the tank and found him in the tent, lying, face down, on a pallet. He called for some morphine, to ease his pain, and made to the witness a statement substantially the same as that he made to

the witness Woodson. He did not say that the defendant tried to induce him to say that the shooting was an accident.

Doctor W. A. Duffey was the next State witness. He described the wound inflicted upon the body of the deceased, and declared that the wound was the cause of the death of the deceased. He stated that the deceased made a voluntary statement to him, which was in substance the same as testified to by Woodson and Mrs. Browning, and in words as set out in the opinion of this court. The defendant was not at Young's tent when witness got there, but came there just before he left. Witness did not know where he had been, but did not think he came from Woodson's house, though he did not see him until he was within twenty feet of the tent. Deceased said to witness that he and defendant never had a difficulty, and that he did not know what defendant meant by shooting him.

E. L. Turner testified, for the State, that he was at Young's tent, at the tank, about a week before the shooting of deceased. Defendant, on that occasion, asked witness when he was going to town, and remarked that he wanted the witness to bring him some ammunition with which to kill birds. Deceased asked why he did not shoot birds with his pistol. He replied that he had no other loads for his pistol than were in it, and he wanted them to kill a man with. Witness thought then that that remark was made as a joke. Browning, the deceased, had lived in the neighborhood about five years. Defendant had lived there about four or five weeks, during which time he conducted business in the tent for Doctor Young. If he ever drank intoxicating liquors witness did not know it.

The defense introduced no evidence.

No brief for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WILLSON, JUDGE. This conviction is for murder of the second degree, and is based upon the following evidence: Deceased made a dying declaration as follows: "I had been in the woods and picked up a snake, and came to the tent with it in my hand. Defendant was lying on a pallet under a tree, with a book and pencil in his hands. I said to him: 'Frank, I have brought you a pet, and will throw it on you.' Defendant said: 'If you throw it on me, I will kill you,' and then ran around the tree and into

the tent. I followed to where there were some boxes near the tent, and stopped; when defendant came out of the tent holding a pistol in his hands behind him. I told him to put the pistol up. I still had the snake in my hand and said: 'Well, let us throw the snake into the pond; and just as I started to throw the snake into the pond, defendant shot me."

When deceased fell, defendant ran up and caught him and said: "Mr. Browning, have I hurt you?" When defendant fired the fatal shot, he did not raise his hand higher than his hip. After deceased fell he tried to get defendant to go after his, deceased's wife, a distance of one mile; and also tried to get him to go for Mr. Woodson, who lived about four hundred yards distant, but he would not go, but went off some where, the evidence does not disclose where, returning in a short while, after some other persons had reached deceased. When defendant returned, he said to deceased: "Mr. Browning, has there ever been any hard feelings between us? It was an accident; you know I did not intend to hurt you." Deceased replied: "Frank, I do not know what your intention was." Deceased stated there never had been any previous difficulty or hard feelings between him and defendant. No one was present when the shooting occurred, but the deceased and the defendant. We have thus stated substantially all the facts connected with the homicide.

The charge of the court was very full, embracing instructions upon murder in both degrees, manslaughter and negligent homicide, and also homicide by accident. No objection was made to the charge in the trial court, nor is any made in this court.

There is but one question for our determination, and that is the sufficiency of the evidence to support the conviction. This question we must determine in favor of the defendant. We do not think the evidence shows that the act of killing was accompanied by malice on the part of defendant, but that, on the contrary, it disproves the existence of malice. Malice is not imputed by the law where the evidence tends to show justification, excuse or mitigation, and in this case, the evidence, in our judgment, very strongly tends to mitigate, if not excuse the homicide.

Because, in our opinion, the conviction is not supported by the evidence, the judgment is reversed and the cause remanded.

*Reversed and remanded.*